IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

**OPEN ACCESS FOR ALL, INC.,**

       **Plaintiff,**

v.

**POSTMATES, INC.,**

       **Defendant.**

Case No. 1:17-cv-23210-KMW

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT
AND SUPPORTING MEMORANDUM OF LAW**

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant Postmates Inc. ("Defendant") moves to dismiss for failure to state a claim upon which relief can be granted all claims by Plaintiff Open Access for All, Inc. ("Plaintiff") alleged against Postmates in the Complaint filed August 25, 2017 (the "Complaint").

## I. INTRODUCTION

Plaintiff alleges in the Complaint that it is a non-profit corporation representing "individuals with sensory related disabilities," and levels two causes of action against Postmates: (1) that Postmates violated Title III of the Americans with Disabilities Act ("ADA") by not making its website www.postmates.com (the "Postmates Website") sufficiently accessible to unidentified individuals allegedly represented by Plaintiff; and (2) that Postmates committed a trespass under Florida state law by placing "cookies" on Plaintiff's members' electronic devices without their consent. *See* ECF No. 1, Complaint at ¶¶15-22, 66-72. As a matter of law, Plaintiff cannot sustain either claim against Postmates.

Plaintiff's ADA claim fails because existing decisional authority from the Southern District of Florida holds that a website like the Postmates Website is not a place of public accommodation under the ADA, and Plaintiff has not alleged any nexus between the Postmates Website and any place of public accommodation owned or operated by Postmates. Similarly, Plaintiff's electronic trespass claim fails because Florida does not recognize a cause of action for purely "electronic" trespass. Accordingly, Plaintiff's Complaint should be dismissed with prejudice.

Alternatively, even if the Court finds that Title III of the ADA applies to a website lacking any nexus to any physical public accommodation owned or operated by Defendant, the Court should invoke the doctrine of primary jurisdiction to stay or dismiss this action and avoid making technical, legal and policy judgments regarding appropriate standards to govern website accessibility until the United States Department of Justice ("DOJ") promulgates the website accessibility regulations currently under consideration.

## II. PLAINTIFF'S COMPLAINT

Plaintiff alleges in the Complaint that the Postmates Website is not compatible with some unspecified "commercially available screen ready software" that some of Plaintiff's alleged members use to access the internet. *See* ECF No. 1, Complaint at ¶¶ 18, 36-40. Based on these allegations, Plaintiff further alleges violations of the ADA stemming from the alleged inability of Plaintiff's individual members to utilize the Postmates Website. *Id.* ¶¶ 73-106. According to the Complaint, the Postmates Website "offers goods and services delivered to the public from restaurants, cafes, snack shops, and fast food restaurants ('eating/drinking establishment(s)[.]'" *Id.* ¶ 24. Plaintiff does not allege (nor could it) that Postmates owns or operates any such "eating/drinking establishments" from which users of the Postmates Website may purchase

"ready-to-eat" meals. Rather, Plaintiff asserts that the Postmates Website is "an *electronic eating/drinking establishment*" that serves as a "*payment platform* for each store or eating/drinking establishment." *Id.* ¶ 28 (emphasis added). Based on these allegations, Plaintiff seeks to assert that the Postmates Website is directly subject to regulation by Title III of the ADA as a place of public accommodation under 42 U.S.C. §12181(7)(E), or, alternatively, because it serves as "an intermediary" between customers and independent "eating/drinking establishments" *Id.* ¶¶ 25, 86. The alleged nexus is based on the following allegations:

- "Defendant's Website is [sic] offers foods and services for a multitude of eating and drinking establishments (which include, but not limited to: restaurants, cafes, snack shops, and fast food restaurants)." *Id.* ¶ 6.

- "Since Postmates picks up ready-to-eat meals from eating/drinking establishments and delivers those ready-to-eat meals to the public, Defendant is an integral part of the eating/drinking establishments it represents through its Website." *Id.* at 26.

- Postmates' Website is subject to the requirements of Title III of the ADA because "[e]ach eating/drinking establishment physical location which Postmates represents is open to the public and is a place of public accommodation[.]" *Id.* ¶ 27.

- "Defendant's Website is an **electronic eating/drinking establishment** (business) which permits the public to obtain information on a multitude of stores and eating/drinking establishment's menu selections online and then providing the ordering and **payment platform** for each store or eating/drinking establishment. Postmates's Website then connects **independent drivers/personnel** to pick up and deliver the store's items or ready-to-eat meals and delivery [sic] them to the public (who orders whose ready-to-eat meals using the internet computer or app)." *Id.* ¶ 28 (emphasis added).

- "Defendant's Website is also a **public store that is on-line**, where the public can view and purchase local store merchandise, as well as Postmates gift cards online and have the store merchandise and Postmates gift cards (electronic gift cards for use on the Website/app) and/or delivered to one's home." *Id.* ¶ 30 (emphasis added).

3

Notably, Plaintiff fails to allege: (1) that Postmates owns or operates any "bricks and mortar" restaurant, store, or other physical location of any kind; (2) that any of Plaintiff's members even attempted to visit any of the *independent* physical restaurant locations; (3) that any such physical restaurant itself is inaccessible; or (4) that the Postmates Website has prevented Plaintiff's members from accessing or enjoying any aspect of any such physical restaurant.

In support of the allegation that the Website itself is a public accommodation under Title III of the ADA, Plaintiff cites a "Statements of Interest" filed by the DOJ in various website accessibility cases pending around the country, including in this District. *Id.* ¶ 81 (citing Statement of Interest of the United States, *Gil v. Winn Dixie Stores, Inc.*, No. 16-23020, [D.E. 23] (S.D. Fla. December 12, 2016), available at https://www.ada.gov/briefs/winn_dixie_soi.pdf (discussing the Department's position on the topic)) ("*Winn Dixie* Statement of Interest").

In Count II, Plaintiff alleges a claim for trespass to chattels under Florida state tort law. *Id.* ¶¶ 107-15. Specifically, Plaintiff alleges that Postmates Website automatically installed "cookies"[1] and software onto Plaintiff's members' computers when they attempted to access the Postmates Website, which somehow interfered with "the personal information and browsing history stored therein[.]" *Id.* ¶¶ 71, 107-15. Plaintiff does not allege any specific injury or damages to Plaintiff, a corporation, or to any specific member or members of Plaintiff.

---

[1] Cookies are text files containing information regarding a user's specific website visit that are retained in a computer's internet browsers. *Internet Security Glossary-Browser Cookies*, PCTOOLS.COM, http://www.pctools.com/security-news/what-are-browser-cookies/ (last visited Oct. 13, 2017). Put differently, "a cookie is a message given to a web browser from a web server that is then sent back to the web server whenever the browser requests a page from it." *Id.* "Cookies are used to identify users, store shopping cart information, and prepare customized web pages that utilize user information." *Id.*

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal of a complaint that fails to state a claim upon which relief may be granted. In considering a Rule 12(b)(6) motion, this Court must accept all well-pled factual allegations in the Complaint as true and consider them in the light most favorable to the Plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Linder v. Portocarrero*, 963 F. 2d 332, 334 (11th Cir. 1992). The court employs a two-pronged approach whereby it "(1) eliminate[s] any allegations in the complaint that are merely legal conclusions; and (2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to entitlement to relief.'" *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009)). Dismissal is warranted if, even assuming the factual allegations in the Complaint as true, a dispositive legal issue precludes relief. *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989); *Brown v. Crawford Cnty.*, 960 F. 2d 1002, 1009-10 (11th Cir. 1992).

Here, even taking the plausible factual allegations in the Complaint as true, Plaintiff nevertheless fails to state any claim upon which relief may be granted because the Postmates Website does not constitute a place of public accommodation under the ADA and Florida law does not recognize a claim for purely electronic trespass. Accordingly, because Plaintiff cannot allege facts to correct these deficiencies, the Complaint should be dismissed with prejudice.

## IV. DISCUSSION

### A. Count I Should Be Dismissed Because The Postmates Website Is Not A "Place Of Public Accommodation"

In 1990, Congress enacted the Americans with Disabilities Act to protect disabled individuals from discrimination. See 42 U.S.C.A. § 12101. Title III of the ADA states:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C.A. § 12182. Section 12181 of the ADA defines a "place of public accommodation" as a place which affects commerce and falls within one of twelve enumerated categories. 42 U.S.C. § 12181(7)(A)-(L); 28 C.F.R. § 36.104.

Courts within the Southern District of Florida have consistently held that websites are not places of public accommodation because "a public accommodation must be a physical, concrete structure." *Access Now, Inc. v. Southwest Airlines, Co.*, 227 F. Supp. 2d 1312, 1318 (S.D. Fla. 2002); *accord Gomez v. Mattress Liquidators, Inc.*, No. 16-20873 (S.D. Fla. Jun. 20, 2016) (King, J.) (dismissing website accessibility claim with prejudice because "there is simply no statutory or precedential support for the proposition that Title III covers anything other than *physical places*.") (emphasis in original) (Ex. A).

The plaintiffs in *Southwest Airlines* argued that the ADA should apply to Southwest's website. The court expressly declined "to expand the ADA to cover 'virtual' spaces" because doing so would "create new rights without well-defined standards." *Southwest Airlines, Co.*, 227 F. Supp. 2d at 1318. The court further explained that "the Internet is 'a unique medium—known to its users as "cyberspace"—located in no particular geographical location but potentially available to anyone, anywhere in the world, with access to the Internet.'" *Id.* at 1321 (quoting *Voyeur Dorm, L.C. v. City of Tampa*, 265 F.3d 1232, 1237 n.3 (11th Cir. 2001)).

Courts in the Third, Sixth, and Ninth Circuits similarly have concluded that places of public accommodation must be physical places. *See Ford v. Schering-Plough Corp.*, 145 F.3d 601, 614 (3d Cir. 1998) (public accommodation does not refer to non-physical access); *Parker v.*

6

*Metro. Life Ins. Co.*, 121 F.3d 1006, 1010-11 (6th Cir. 1997) (en banc) (public accommodation is a physical place); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1115 (N.D. Cal. 2011) (Facebook is not a "place of public accommodation" because it operates only in cyberspace).

Here, Plaintiff's ADA claim cannot be based solely on the Postmates Website itself because it is not a "place of public accommodation" (i.e., a physical structure in a particular geographical location). Indeed, even though Plaintiff paradoxically alleges that "Defendant's Website is an *electronic* eating/drinking establishment," it subsequently concedes that the Postmates Website is only a "*payment platform*" used by third party customers and independent merchants (i.e., restaurants/retailers not owned or operated by Postmate) to facilitate the "pick up and deliver[y of] the store's items[.]" *See* ECF No. 1, Complaint at ¶28 (emphasis added).

Therefore, to the extent the Complaint purports to state a claim based solely on the Website's accessibility, the claim should be dismissed with prejudice.

> **B.     Count I Should Be Dismissed Because It Does Not Allege Any Nexus Between The Postmates Website And A Physical Store Owned Or Operated By Postmates**

Plaintiff fails to (and cannot) plead the required nexus between the service offered on the Postmates Website and any recognized place of public accommodation to establish a violation of the ADA. Unequal access to a "service" of a place of public accommodation only violates the ADA if a sufficient "nexus" exists between the service and the physical place of public accommodation. *Rendon v. Valleycrest Productions, Ltd.*, 294 F.3d 1279, 1284 (11th Cir. 2002). In *Rendon*, the plaintiffs alleged that the "fast finger" telephone selection process employed by the game show producers of "Who Wants to Be a Millionaire" was a discriminatory policy or process that deprived them of the opportunity to compete on the program. The Eleventh Circuit acknowledged a cognizable claim under Title III because the plaintiffs clearly established a

strong and direct nexus between the allegedly inaccessible service employed by the game show producers and the "privilege or advantage" of participating "in a competition held in a tangible public accommodation" owned or operated by the game show. *Id.* at 1283-84.

While the Eleventh Circuit has yet to apply the nexus approach to ADA claims based on website accessibility, district courts in the Southern District of Florida have found that for the ADA to apply to a service, the required nexus must be significant. *See e.g., Southwest Airlines, Co.*, 227 F. Supp. 2d at 1320; *Gomez v. Bang & Olufsen Am., Inc.*, No. 16-23801 (S.D. Fla. Feb. 2, 2017) (Lenard, J.)(Ex. B.). For example, in *Gomez v. Bang & Olufsen*, the plaintiff alleged that defendant's website, which allowed "consumers to search for brand merchandise, research information about pricing and custom installation services and make private appointments with sales representatives at defendant's brick-and-mortar retail locations," was inaccessible to visually-impaired persons. *Gomez v. Bang & Olufsen Am., Inc.*, No. 16-23801, at 9. Specifically, the plaintiff claimed that the inaccessibility of the website prevented him from enjoying all of the benefits of the defendant's retail locations. The court dismissed the case, stating:

> [T]he ADA does not require places of public accommodations to create full-service websites for disabled persons. In fact, the ADA does not require a place of public accommodation to have a website at all. All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-mortar store.

*Id.* at 11. The court also noted that "if Congress – recognizing that the internet is an integral part of modern society – wishes to amend the ADA to define a website as a place of public accommodation, it may do so." *Id.* "But the Court, having no legislative power, cannot create law where none exist." *Id.*

Likewise, federal courts outside Florida have rejected the nexus argument on similar facts. For example, in *Jancik v. Redbox Automated Retail*, LLC, 2014 WL 1920751 (C.D. Cal. May 14, 2014), the court dismissed an ADA claim based on the nexus between defendant Redbox's website and its physical kiosks. Although the website's related smartphone application enabled users to reserve movies for pick-up at physical kiosks, the court held that the website and the public accommodation were not "heavily integrated" since one was not a "gateway" to the other. *Id.* at *9. Here, Postmates does not own or operate *any* physical locations, which makes the alleged nexus (if any) even more attenuated.

Even more, several district courts of other circuits have "concluded that Title III does not apply to various internet-based retailers or service providers."[2] *Nat'l Fed'n of the Blind v. Scribd Inc.*, 97 F. Supp. 3d 565, *568 (D. Vt. 2015); *see also Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1023-34 (N.D. Cal. 2012) (holding websites are not places of public accommodation because they are not physical places); *Ouellette v. Viacom*, No. CV 10-133-M-DWM-JCL, 2011 WL 1882780, at *4-5 (D. Mont. Mar. 31, 2011) (holding a website by itself it not a physical place and the plaintiff did not allege a sufficient connection between the website and a physical structure); *Young v. Facebook, Inc.*, 790 F. Supp. 2d 1110, 1114-16 (N.D. Cal. 2011) (explaining

---

[2] One court in the Southern District of Florida recently reached the opposite conclusion in a website accessibility suit. *See Gil v. Winn Dixie Stores, Inc.*, No. 16-23020, (S.D. Fla. Mar. 15, 2017) (Scola, J.). In *Winn Dixie*, the defendant's website allowed customers to locate physical store locations and refill prescriptions for in-store pick-up. The visually-impaired plaintiff specifically alleged that the inaccessibility of the website prevented him from taking advantage of these in-store benefits, thereby providing a nexus between the defendant's website and its physical stores. The court found that the plaintiff alleged a sufficient nexus based on the in-store services provided via the defendant's website. *Id.* at *7-8. While Plaintiff may attempt to rely on *Winn Dixie* in the instant case, the facts are inapposite. Here, Plaintiff does not even allege that Postmates owns or operates any physical stores. Rather, Postmates' Website merely serves as a "payment platform" to pick up and deliver food items from physical restaurants owned and operated by separate and independent parties. *See* ECF No. 1, Complaint at ¶¶23-33. Therefore, the required nexus between the alleged intangible, cyber barrier and the physical public accommodation is far more remote here than in *Winn Dixie*. As Judge Lenard held in *Bang and Olufsen*, where a website is wholly unconnected to a physical location it is *not* a public place of accommodation under the ADA. No. 16-23801 (S.D. Fla. Feb. 2, 2017).

that a website is not a physical structure and plaintiff had not alleged a sufficient nexus to a physical place of public accommodation); *Earll v. eBay, Inc.*, No. 5:11-cv-00262-JF (HRL), 2011 WL 3955485, at *2 (N.D. Cal. Sept. 7, 2011) (noting that places of public accommodation are limited to physical places); *see also National Fed'n of the Blind v. Target Corp.*, 452 F. Supp. 2d 946, 954 (N.D. Cal. 2006) (holding plaintiffs had alleged sufficient facts to state a claim because the website was heavily integrated with brick-and-mortar stores and operated as a gateway to the stores). In addition, the Ninth Circuit has expressly held that website operators with no physical place of business open to the public—as in the case at bar— are not operators of a public place of accommodation under the ADA. *Cullen v. Netflix, Inc.*, 600 Fed. Appx. 508 (9th Cir. 2015); *Earll v. eBay, Inc.*, 559 Fed. Appx. 695 (9th Cir. 2015).

Pursuant to the weight of authority in this Circuit, Plaintiff has failed to allege a sufficient nexus between its members' claimed inability to access the Postmates Website and their ability to access and enjoy the goods and services of the independent physical restaurants. Count I generally alleges that the Website "allows the public the ability to order food for pick up or delivery online, therefore the Website is itself a food service establishment." *Id.* at ¶ 84. But Plaintiff's generalized nexus allegations do not plausibly allege that the Website and the restaurants Postmates delivers food items for are "heavily integrated" such that one is the "gateway" to the other. *See Jancik*, 2014 WL 1920751 at *9. Like the website in *Bang & Olufsen*, which provided product information and the ability to make an in-store appointment, the allegedly inaccessible features of Postmates' Website do not give rise to a claim under the ADA.

For these reasons, Count I of the Complaint should be dismissed because Plaintiff fails to allege that Postmates owns or operates any physical place of public accommodation and thus cannot plausibly allege that Postmates Website has a nexus to any such property.

### C. Count II Should Be Dismissed Because Florida Does Not Recognize A Cause Of Action For Electronic Trespass to Chattels

Plaintiff cannot sustain a claim that the alleged installation of cookies and/or software onto members' computer by the Postmates Website violates Florida law.

"Trespass to personal property is the intentional use of, or interference with, a chattel which is in the possession of another, without justification." *Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 805 So. 2d 835, 846 (Fla. 4th DCA 2001) (quoting *Coddington v. Staab*, 716 So.2d 850, 851 (Fla. 4th DCA 1998)) (dismissing debtors' claims against creditor for wrongfully garnishing bank accounts because such accounts do not constitute "chattels" protected by the law).

The *Burshan* court defined "chattels" as:

> Every species of property, movable or immovable, which is less than a freehold. Personal chattels are properly things movable, which may be carried about by the owner; such as animals, household stuff, money, jewels, coin, garments, and everything else that can be put in motion and transferred from one place to another.

*Burshan*, 805 So. 2d at 846.

Based upon this accepted definition of "chattels," Florida law does not support a claim for "electronic trespass." *See e.g., Inventory Locator Serv., LLC v. Partsbase, Inc.*, 2005 WL 2179185, at *10–12 (W.D. Tenn. Sept. 6, 2005). In *Partsbase*, one party hacked into a secure electronic database owned by the other party and made changes to the database which affected the database owner's customers. The court first acknowledged that Florida courts had not yet

addressed the issue of electronic trespass before examining Florida precedent regarding trespass to personal property generally. The court ultimately dismissed the trespass claim, concluding that the information in the database was an intangible structure, not a chattel for trespass purposes. *Id.* at *12.

Here, Count II is based on Postmates' alleged installation of "software onto [Plaintiff's] user's computer[s]" and use of "browser bookies (both session cookies and persistent cookies) to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history." *See* ECF No. 1, Complaint at ¶71. Such a process, even if true, cannot sustain a cause of action. That is, Florida law does not support a cause of action based on of the theory of electronic trespass and neither the cookies not the information allegedly gathered are "chattels" under Florida law. The Court therefore should dismiss Count II with prejudice for failure to state a claim upon which relief may be granted.

> D. **Alternatively, The Action Should Be Stayed Or Dismissed Without Prejudice Pursuant To The Primary Jurisdiction Doctrine**

Even if the Court departs from recent Southern District of Florida precedent and finds that Title III of the ADA applies to websites generally, the Court should stay or dismiss the action until the DOJ issues its proposed rules on website accessibility so that the parties and this Court can then determine how the regulations may impact this litigation. Piecemeal pronouncements regarding accessibility standards would lead to conflicting rulings and inconsistent application of the law.

The primary jurisdiction doctrine allows courts to dismiss or stay an action pending a resolution of some portion of the actions by an administrative agency. *See Abels v. JPMorgan Chase Bank, N.A.*, 678 F. Supp. 2d 1273, 1277 (S.D. Fla. 2009) (quoting *Smith v. GTE Corp.*, 236 F.3d 1292, 1298 n. 3 (11th Cir. 2001). "The main justifications for the rule of primary

jurisdiction are the expertise of the agency deferred to and the need for a uniform interpretation of a statute or regulation." *Boyes v. Shell Oil Products Co.*, 199 F.3d 1260, 1265 (11th Cir. 2000).

Courts consider four factors when applying the doctrine of primary jurisdiction: (1) the need to resolve an issue that (2) has been placed by Congress within the jurisdiction of an administrative body having regulatory authority (3) pursuant to a statute that subjects an industry or activity to a comprehensive regulatory scheme that (4) requires expertise or uniformity in administration. *Bondhus v. Henry Schein, Inc.*, 2015 WL 1968841, at *3 (S.D. Fla. Apr. 30, 2015). Here, even assuming *arguendo*, that the ADA applies to the Postmates Website, the case presents all four factors necessary to apply the doctrine of primary jurisdiction. The case involves (1) an issue of accessibility (2) regulated by an administrative agency, in the DOJ[3]; (3) pursuant to the comprehensive regulations of the ADA; (4) which requires industry-wide uniformity in administration.

To date, the ADA, its implementing regulations, and the DOJ's accessibility guidelines are all silent with respect to the standards that apply to the websites of private businesses. The DOJ has acknowledged that the "Internet as it is known today did not exist when Congress enacted the ADA and, therefore, neither the ADA nor the regulations the Department promulgated under the ADA specifically address access to Web sites." Advanced Notice of Proposed Rulemaking ("ANPRM") 75 Fed. Reg. 43, 460 (July 26, 2010). The DOJ had further recognized that "inconsistent court decisions, differing standards for determining Web accessibility, and repeated calls for Department action indicate remaining uncertainty regarding the applicability of the ADA to Web sites of entities covered by Title III." *Id.* at 43, 464.

---

[3] The DOJ has statutory authority to "issue implementing regulations, see 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered individuals and institutions, § 12206(c), and to enforce Title III in court, § 12188(b)." *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998).

Accordingly, the DOJ has voiced its intent to exercise its rulemaking authority to provide accessibility standards for websites, which it is in the process of developing.

One court recently applied the primary jurisdiction doctrine to dismiss a similar website accessibility claim under Title III without prejudice until the DOJ issued guiding regulations. *Robles v. Dominos Pizza LLC*, 16-06599, at *11 (C.D. Cal. Mar. 20, 2017) (Ex. C). In *Robles*, the court found that the DOJ's multi-year campaign to issue a final rule on this subject demonstrated the need for both expertise and uniformity in administration on the issue of web accessibility obligations. *Id.* The court further stated that "[s]uch regulations and technical assistance are necessary for the Court to determine what obligations a regulated individual or institution must abide by in order to comply with Title III."

Based on the foregoing, this Court need not expend limited judicial resources deciding issues that are on the verge of being addressed by the DOJ's website accessibility rules. Therefore, at a minimum, this action should be stayed or dismissed without prejudice until the DOJ promulgates applicable regulations.

## V. CONCLUSION

Because the Postmates Website does not constitute a public accommodation subject to the ADA, and because Florida law does not recognize a claim for "electronic" trespass as alleged by Plaintiff, Postmates respectfully requests that the Court dismiss all claims asserted against Postmates in Plaintiff's Complaint.

DATED:  this 19th day of October, 2017	Respectfully submitted,

                                                  /s/ *Lindsay M. Alter*
                                                  Courtney B. Wilson, Esq.
                                                  Florida Bar No. 0614580
                                                  E-mail: cwilson@littler.com
                                                  Secondary:  kljackson@littler.com
                                                  Lindsay M. Alter, Esq.
                                                  E-mail: lalter@littler.com
                                                  Littler Mendelson, P.C.
                                                  Wells Fargo Center
                                                  333 SE 2nd Avenue, Suite 2700
                                                  Miami, FL 33131
                                                  Telephone:  (305) 400-7500
                                                  Facsimile:   (305) 603-2552
                                                  *COUNSEL FOR DEFENDANT*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 19th day of October, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF. I also certify that the foregoing document is being served on this day on all counsel of record or *pro se* parties identified on the Service List in the manner specified, either via transmission of Notices of Electronic filing generated by the CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

                                                  BY:  /s/ *Lindsay M. Alter*
                                                       Lindsay M. Alter, Esq.

**SERVICE LIST**

*COUNSEL FOR PLAINTIFF,*
*OPEN ACCESS FOR ALL, INC.*

Scott R. Dinin, Esq.
E-Mail: inbox@dininlaw.com
SCOTT R. DININ, P.A.
4200 NW 7th Avenue
Miami, Florida 33127
Telephone: (786) 431-1333


*COUNSEL FOR DEFENDANT,*
*POSTMATES INC. d/b/a*
*POSTMATES and WWW.POSTMATES.COM*

Courtney B. Wilson, Esq.
Florida Bar No: 0614580
E-mail: cwilson@littler.com
Secondary: kljackson@littler.com
Lindsay M. Alter, Esq.
Florida Bar No. 103237
E-mail: LAlter@littler.com
Secondary: btapia@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 400-7500
Facsimile: (305) 603-2552


Firmwide:150644231.4 078219.1050