UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:16-cv-23801--LENARD

**ANDRES GOMEZ,**

    **Plaintiff,**

**VS.**

**BANG & OLUFSEN AMERICA, INC.,**

    **Defendant.**

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS (D.E. 11); DISMISSING PLAINTIFF'S ADA CLAIM WITHOUT PREJUDICE; AND ADMINISTRATIVELY CLOSING CASE

**THIS MATTER** is before the Court on Bang and Olufsen America Inc.'s (hereinafter, "Defendant") Motion to Dismiss (D.E. 19), filed on November 4, 2016. Andres Gomez (hereinafter, "Plaintiff") filed his Response in Opposition (D.E. 21) on November 21, 2016; and Defendant replied (D.E. 22) on December 1, 2016. Having fully considered the Motion, and Response and Reply thereto, the Court finds as follows.

### I.  BACKGROUND

Plaintiff is legally blind. (D.E. 1 at ¶ 15.) He cannot use a computer without the assistance of screen reader software. (Id. at ¶ 16.) He is interested in purchasing merchandise from the Defendant – the owner and operator of a chain of high-end audio and visual equipment stores. (Id. at ¶ 17.) The Defendant's website, www.bang-olufsen.com/en (id. at ¶ 19), allows consumers to, among other things: (1) identify the physical locations of Bang and Olufsen stores throughout the United States, (id. at ¶ 21); (2) browse and search for brand merchandise, (id. at ¶ 22); (3) research information about

1

Bang and Olufsen merchandise and custom installation services, (id. at ¶ 24); and (4) make private appointments with sales representatives at Defendant's brick-and-mortar retail locations, (id. at ¶ 23).

Plaintiff attempted to access Defendant's website to browse and research audio equipment. However, according to Plaintiff, Defendant's website is not compatible with his screen reader software or any other software which would make the website accessible to visually-impaired customers. (Id. at ¶¶ 34 – 35.) Plaintiff alleges that Defendant's website contains various access barriers including: (1) the lack of alt-text on graphics; (2) inaccessible forms; (3) the lack of adequate prompting and labelling; (4) the denial of keyboard access; (5) the requirement that transactions be performed solely with a mouse; and (6) a lack of prompting information to allow visually-impaired customers to fill-out online forms. (Id. at ¶¶ 35 – 36.)

Plaintiff filed the instant lawsuit, claiming that Defendant's website violates Title III of the Americans with Disabilities Act of 1990, as amended, §§ 12181 – 12189 ("ADA").[1] He claims that Defendant's website is a place of public accommodation and is covered by the ADA. Defendant disagrees, asserting that its website is not a place of public accommodation and therefore Plaintiff has failed to state a claim under the ADA. (D.E. 19.) Whether Defendant's website is a place of public accommodation as defined by the ADA is the sole issue before the Court.

---

[1] Plaintiff also raised a claim under the Electronic Communications Privacy Act, but he subsequently dismissed this claim voluntarily. (D.E. 20.)

## II.   LEGAL STANDARDS

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqubal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "A formulaic recitation of the elements of the cause of action will not do," id. at 1949 (quoting Twombly, 550 U.S. at 555), and the allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." Iqubal 556 U.S. at 678. When considering whether a complaint should be dismissed, the Court accepts the facts alleged in the Complaint as true, and construes all reasonable inferences in the light most favorable to plaintiffs. See Bank v. Pitt, 928 F.2d 1108, 1109 (11th Cir. 1991).

## III.   ANALYSIS

Title III of the ADA prohibits the owner of a place of public accommodation from engaging in discrimination against disabled persons:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a). To state a claim for relief under the ADA an individual must allege and establish that:

> (1) [he] is disabled within the meaning of the ADA;
>
> (2) the defendant is a private entity that owns, leases, or operates a place of public accommodation; and
>
> (3) the plaintiff was denied public accommodations by the defendant because of [his] disability.

Steelman v. Florida, No. 6:13-CV-123-ORL-36, 2013 WL 1104746, at *1 (M.D. Fla. Feb. 19, 2013), report and recommendation adopted, No. 6:13-CV-123-ORL-36, 2013 WL 1104256 (M.D. Fla. Mar. 18, 2013) (quoting Ariz. ex rel. Goddard v. Harkins Amusement Enters., 603 F.3d 666, 670 (9th Cir. 2010)).

An entity is a place of "public accommodation," and is therefore regulated by the ADA, if its operations "affect commerce," and it falls within one of twelve enumerated categories. Rendon v. Valleycrest Prods., Ltd., 294 F.3d 1279, 1282 (11th Cir. 2002) (citing 42 U.S.C. § 12181(7)(A)-(L)). The twelve enumerated categories are:

> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;

4

(C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;

(D) an auditorium, convention center, lecture hall, or other place of public gathering;

(E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;

(F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

(G) a terminal, depot, or other station used for specified public transportation;

(H) a museum, library, gallery, or other place of public display or collection;

(I) a park, zoo, amusement park, or other place of recreation;

(J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;

(K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

(L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7)(A)-(L).[2]  Plaintiff argues that Defendant's retail stores – and by extension its website – are sales, rental or service establishments as defined by Section 12181(7)(E) and (F).  Defendant admits that its retail locations are places of public accommodation; but asserts that its website falls outside the scope of the twelve enumerated categories and that Congress has not amended the ADA to apply to commercial websites.

Since the dawn of the internet age, various courts have considered whether commercial websites qualify as places of public accommodation under the ADA. See, e.g., Nat'l Fed'n of the Blind v. Scribd Inc., 97 F. Supp. 3d 565, 567 (D. Vt. 2015) (holding that Scribd's website, which allowed consumers to access a digital library for a monthly fee, was a place of public accommodation even though it was not associated with any physical, concrete location); Jancik v. Redbox Automated Retail, LLC, No. SACV 13–1387–DOC (RNBx), 2014 WL 1920751, at *8–9 (C.D. Cal. May 14, 2014) (holding a website was not a place of public accommodation because it was not a physical place and there was not a sufficient nexus between the website and physical kiosks); Cullen v. Netflix, Inc., 880 F. Supp. 2d 1017, 1023 (N.D. Cal. 2012), aff'd, 600 F. App'x 508, 509 (9th Cir. 2015) (holding that Netflix's website is unconnected to any physical, concrete retail establishment and is therefore not a public accommodation under the ADA); Anderson v. Macy's Inc., No. 2:12-CV-00556, 2012 WL 3155717, at *4 (W.D. Pa. Aug. 2, 2012) ("Since a website is not a physical accommodation, the Title III claim against Macy's Online must be dismissed."); Ouellette v. Viacom, No. CV 10–

---

[2] The text of the ADA does not list a website as a place of public accommodation.

133–M–DWM–JCL, 2011 WL 1882780, at *4–5 (D. Mont. Mar. 31, 2011) (holding a website by itself is not a physical place and the plaintiff did not allege a sufficient connection between the website and a physical structure); Young v. Facebook, Inc., 790 F.Supp.2d 1110, 1115 (N.D. Cal. 2011) (dismissing ADA claim against Facebook in part because "Facebook operates only in cyberspace, and is thus is not a 'place of public accommodation' as construed by the Ninth Circuit."); Earll v. eBay, Inc., No. 5:11–CV–00262–JF HRL, 2011 WL 3955485, at *2 (N.D. Cal. Sept. 7, 2011), aff'd, 599 F. App'x 695, 696 (9th Cir. 2015) (holding that eBay's website is not a place of public accommodation under the ADA); National Federation of the Blind v. Target Corporation, 452 F.Supp.2d 946, 956 (N.D. Cal. 2006) (denying motion to dismiss and holding "that to the extent that plaintiffs allege that the inaccessibility of Target.com impedes the full and equal enjoyment of goods and services offered in [actual, physical] Target stores," the allegations stated a claim upon which relief could be granted); Access Now, Inc. v. Sw. Airlines, Co., 227 F. Supp. 2d 1312, 1321 (S.D. Fla. 2002) (granting defendant's motion to dismiss because plaintiff failed to establish a nexus between southwest.com and any restriction on the full enjoyment of a physical, concrete place of public accommodation). While there is some disagreement amongst district courts on this question, it appears that the majority of courts agree that websites are not covered by the ADA unless some function on the website hinders the full use and enjoyment of a physical space.

The Eleventh Circuit has not directly addressed this issue, but its decision in Rendon v. Valleycrest Prods., Inc. offers some guidance. 294 F.3d 1279 (11th Cir. 2002). In that opinion, the Eleventh Circuit appears to limit the ADA's regulatory reach

7

to physical, concrete places of public accommodation or anything that affects access to or enjoyment of those physical spaces. See Access Now, Inc., 227 F.Supp.2d at 1318 (citing Rendon, 294 F.3d at 1283–84) ("In interpreting the plain and unambiguous language of the ADA, and its applicable federal regulations, the Eleventh Circuit has recognized Congress' clear intent that Title III of the ADA governs solely access to physical, concrete places of public accommodation."). The Rendon court held that the gameshow, Who Wants to Be a Millionaire, is a place of public accommodation because it is filmed in a studio for the purposes of entertainment. Rendon, 294 F.3d at 1283 ("[W]e agree [] that the Millionaire show takes place at a public accommodation (a studio) within the meaning of 42 U.S.C. § 12181(7)(C) (covering theaters and other places of entertainment). . ."). The Eleventh Circuit further held that the telephone-based application process for becoming a contestant on the show imposed significant barriers to hearing-impaired individuals and their ability to become contestants on the show. Id. at 1283 – 84 ("[T]he automatic process used to select contestants tends to 'screen out' many disabled individuals as described in section 12182(b)(2)(A)(i) . . . . [and] [t]here is nothing in the text of the statute to suggest that discrimination via an imposition of screening or eligibility requirements must occur on site to offend the ADA."). The court concluded that the ADA applied to the telephonic application process, because it restricted access to the place of public accommodation (i.e. the studio).

Based on the text of the ADA, the Eleventh Circuit's reasoning in Rendon and the rationale employed by other courts who have construed the ADA in the context of commercial websites, the Court concludes that a website that is wholly unconnected to a

8

physical location is generally not a place of public accommodation under the ADA. However, if a plaintiff alleges that a website's inaccessibility impedes the plaintiff's "access to a specific, physical, concrete space[,]" and establishes some nexus between the website and the physical place of public accommodation, the plaintiff's ADA claim can survive a motion to dismiss.  Id.; see also Peoples v. Discover Financial Services, Inc., 2009 WL 3030217, *2 (E.D. Pa. 2009) (Services available on an internet website must have some connection to a physical place of accommodation to fall within the ADA's "place of public accommodation" requirement).

In this case, Plaintiff alleges that Defendant's website is inaccessible to visually-impaired persons.  Specifically, he alleges that Defendant's website, www.bang-olufsen.com/en (D.E. 1 at ¶ 19), allows consumers to search for brand merchandise (id. at ¶ 22), research information about pricing and custom installation services (id. at ¶ 24) and make private appointments with sales representatives at Defendant's brick-and-mortar retail locations (id. at ¶ 23).  He contends that the flaws in Defendant's website could hypothetically impede a blind person from enjoying all of the benefits of Bang and Olufsen's retail locations.  However, Plaintiff fails to allege any facts that Bang and Olufsen's website impeded his own personal enjoyment of the goods and services offered at its retail locations.  His generalized grievances are wholly unconnected to any harm he actually suffered at the place of public accommodation (i.e. the concrete, physical store) and are therefore insufficient to survive a motion to dismiss.

Most tellingly, Plaintiff pleaded that:

> The opportunity to shop for high-end, designer state of the art studio equipment from his home is an important accommodation [for] the Plaintiff, because travelling outside the home as a blind individual is a difficult and frightening experience.
>
> . . . .
>
> Buying and ordering high-end, designer state of the art audio equipment online and having those purchases delivered to one's home is an important accommodation that helps improve the lives of vision impaired people such as the Plaintiff (and thousands of others like him) and helps them integrate and participate in society.
>
> . . . . .
>
> The fact that Plaintiff Gomez could not interface with the Defendant's www.bang-olufsen.com/en website left him feeling as if anohter door had been slammed in his face, as he is/was unable to participate in the shopping experience online at the www.bang-olufsen.com/en website as experienced by the general public, 26 years after [] Title III of the ADA was enacted and which promised to remove such barriers.
>
> . . . .
>
> For many individuals with disabilities who are limited in their ability to travel outside their home, the internet is one of the few available means of access to the goods and services in our society with safety and in dealing with terms of their disability.

(D.E. 1 at ¶¶ 27, 30, 38 and 57.)  Based on these allegations, it appears that the Plaintiff never intended to utilize Bang and Olufsen's physical, retail location; but instead planned to order audio equipment online and have it delivered to his home.

Plaintiff's grievance seems to be that Defendant's website does not provide a blind person with the same online-shopping experience as non-disabled persons.  However, the

10

ADA does not require places of public accommodations to create full-service websites for disabled persons.[3] In fact, the ADA does not require a place of public accommodation to have a website at all. All the ADA requires is that, if a retailer chooses to have a website, the website cannot impede a disabled person's full use and enjoyment of the brick-and-motar store. To survive a motion to dismiss, Plaintiff must claim an actual (not hypothetical) impediment to the use of Defendant's retail location.

Because Plaintiff has not alleged that Defendant's website impeded his personal use of Bang and Olfusen's retail locations, his ADA claim must be dismissed.

IV. Conclusion

Accordingly, it is **ORDERED AND ADJUGED** that:

1. Defendant's Motion to Dismiss (D.E. 19), filed on November 4, 2016, is **GRANTED**;
2. Plaintiff's claims are dismissed without prejudice;
3. This case is **ADMINISTRATIVELY CLOSED**; and
4. Plaintiff may move to re-open this case if he files an amended pleading within fourteen (14) days of this Order.

**DONE AND ORDERED** in Chambers in Miami, Florida this 2nd day of February, 2017.

*[signature]*
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**

---

[3] If Congress – recognizing that the internet is an integral part of modern society – wishes to amend the ADA to define a website as a place of public accommodation, it may do so. But the Court, having no legislative power, cannot create law where none exist.