UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

Priority ___
Send ___
Enter ___
Closed ___
JS-5/JS-6 **JS-6**
Scan Only ___

=====================================================================

**CASE NO.:** CV 16-06599 SJO (SPx)     **DATE:** March 20, 2017

**TITLE:** Robles v. Dominos Pizza LLC

=====================================================================

**PRESENT: THE HONORABLE S. JAMES OTERO, UNITED STATES DISTRICT JUDGE**

Victor Paul Cruz                           Not Present
Courtroom Clerk                          Court Reporter

**COUNSEL PRESENT FOR PLAINTIFF:**      **COUNSEL PRESENT FOR DEFENDANT:**

Not Present                                Not Present

=====================================================================

**PROCEEDINGS (in chambers): ORDER GRANTING DEFENDANT'S ALTERNATIVE MOTION TO DISMISS OR STAY** [Docket No. 32]

This matter is before the Court on Defendant Domino's Pizza, LLC's ("Defendant") Motion for Summary Judgment or, in the Alternative, Dismissal or Stay ("Motion"), filed February 22, 2017. Plaintiff Guillermo Robles ("Plaintiff") opposed the Motion ("Opposition") on March 6, 2017, and Defendant replied ("Reply") on March 13, 2017. The Court found this matter suitable for disposition without oral argument and vacated the hearing scheduled for January 27, 2017. *See* Fed. R. Civ. P. 78(b). For the following reasons, the Court **GRANTS** Defendant's Motion to Dismiss.

I.     FACTUAL AND PROCEDURAL BACKGROUND

This case, which commenced on September 1, 2016, centers on allegations that Defendant has failed "to design, construct, maintain, and operate its website [and mobile application] to be fully accessible to and independently usable by Plaintiff and other blind or visually-impaired people" using "screen-readers." (*See* Compl. ¶¶ 2-3, ECF No. 1.) In particular, Plaintiff contends Defendant's website, Dominos.com, does not permit a user to complete purchases using a particular screen-reading software program, Job Access With Speech ("JAWS") . (Compl. ¶¶ 18, 27-29.) Plaintiff also contends Defendant's mobile application ("Mobile App") does not permit him to access the menus and applications on his iPhone using the iPhone's "VoiceOver" software program. (Compl. ¶¶ 30-33.) Plaintiff alleges neither Dominos.com nor the Mobile App are in compliance with version 2.0 of W3C's Web Content Accessibility Guidelines ("WCAG 2.0"), and further alleges that "simple compliance with the WCAG 2.0 Guidelines would provide Plaintiff and other visually-impaired consumers with equal access" to these access portals. (Compl. ¶ 36.) Plaintiff asserts the following four causes of action against Defendant: (1) violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12181 *et seq.* (Dominos.com); (2) violation of the ADA, 42 U.S.C. § 12181 *et seq.* (Mobile App); (3) violation of the Unruh Civil Rights Act ("UCRA"), California Civil Code § 51 *et seq.* (Dominos.com); and (4) violation of the UCRA, California Civil Code § 51 *et seq.* (Mobile App). (*See generally* Compl.) Plaintiff seeks, among

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: **CV 16-06599 SJO (SPx)**                DATE: **March 20, 2017**

other things, preliminary and permanent injunctive relief, an award of statutory minimum damages of $4,000 per violation, and attorneys' fees and expenses. (*See* Compl. at 18-19.)

Defendant filed its Answer on September 29, 2016, and the Court held a scheduling conference on November 28, 2016, setting a discovery cutoff deadline of May 29, 2017, a motion cutoff deadline of June 26, 2017, and a trial date of August 29, 2017. (*See* Answer, ECF No. 15; Minutes of Scheduling Conference, ECF No. 26.) The following facts are undisputed.

Since February 20, 2017 at the latest, both Defendant's website, www.dominos.com, and its mobile website have included accessibility banners that direct users who access the website using a screen reader with the following statement: "If you are using a screen reader and are having problems using this website, please call 800-254-4031 for assistance." (*See* Pl.'s Statement of Genuine Disputes of Materials Facts ("Pl.'s Response") ¶¶ 1-2, ECF No. 35.) This phone number, 800-252-4031, is staffed by a live representative who can provide blind or visually impaired individuals with assistance using Defendant's websites, although callers may experience delays and be placed on hold. (Pl.'s Response ¶¶ 3-4.) Customers may also directly call their local Domino's Pizza restaurant to order food, purchase goods, or ask questions. (Pl.'s Response ¶ 5.)

II.     DISCUSSION

Defendant, not pleased with having to defend against what it characterizes on the first page of its Motion as both a "form lawsuit" and a "nuisance lawsuit[ ]," moves for summary judgment as to each of Plaintiff's four causes of action, submitting that dismissal is warranted for a bevy of reasons. (*See* Mot. 1, ECF No. 32.) First, Defendant asks the Court to find that neither Dominos.com nor the Mobile App are "places of public accommodation" within the meaning of the ADA. (Mot. 3-7.) Second, it contends that the instant lawsuit violates fundamental principles of due process because the ADA, its implementing regulations, and the DOJ's accessibility guidelines not only are silent with respect to the standards that apply to private and public websites, but also fail to indicate whether compliance with the WCAG or the Apple Standards is tantamount to compliance with the statute. (Mot. 7-16.) Third, Defendant argues Plaintiff cannot establish violations of any applicable accessibility standards. (Mot. 16-19.) Fourth, it submits that Plaintiff's UCRA claims should be denied because Plaintiff cannot prove that Defendant intentionally discriminated against him. (Mot. 19-20.) Fifth, Defendant contends Plaintiff's UCRA claims fail because Defendant lacks fair notice of the barriers Plaintiff claims exist. (Mot. 20-23.) Finally, Defendant argues that, in the alternative, Plaintiff's claims should be stayed because the Department of Justice ("DOJ") has not promulgated any accessibility regulations governing the website or mobile applications of private businesses. (Mot. 23-25.)

Plaintiff responds by challenging procedural, evidentiary, and substantive aspects of Defendant's Motion. First, Plaintiff argues the Court should deny the Motion because of the following two procedural shortcomings: (1) Defendant's failure to meet and confer regarding the instant motion;

CASE NO.: <u>CV 16-06599 SJO (SPx)</u>          DATE: <u>March 20, 2017</u>

and (2) Defendant's filing of an oversized memorandum of points and authorities. (Opp'n 1-2, ECF No. 33.) Second, Plaintiff contends that because Defendant's evidence only establishes the websites at issue bore the "accessibility banner" in February of this year, this "banner" cannot support Defendant's claim of "effective communication" in 2016 and does not necessarily render this case moot. (Opp'n 4-7.) Third, Plaintiff argues that even if the "banner" had been present on Defendant's websites in 2016, there would still be triable issues as to whether Defendant's websites violate the ADA given regulations concerning effective communication titled "auxiliary aids and services." (Opp'n 7-10.)

    A.    <u>Legal Standard</u>

Federal Rule of Civil Procedure 56(a) mandates that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

Once the moving party meets its initial burden, the "party asserting that a fact cannot be or is genuinely disputed must support the assertion." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in support of the [nonmoving party]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("[O]pponent must do more than simply show that there is some metaphysical doubt as to the material facts."). Further, "[o]nly disputes over facts that might affect the outcome of the suit . . . will properly preclude the entry of summary judgment [and f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. At the summary judgment stage, a court does not make credibility determinations or weigh conflicting evidence. *See id.* at 249. A court is required to draw all inferences in a light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587.

///
///
///
///

    B.    <u>Analysis</u>

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.:  <u>CV 16-06599 SJO (SPx)</u>           DATE:  <u>March 20, 2017</u>

1.    <u>Whether and to What Extent the ADA Regulates Web Accessability</u>

The central question Defendant asks the Court to answer is whether and to what extent the ADA, a statute enacted before the widespread adoption of the Internet, regulates the manner in which companies can permissibly engage in e-commerce.  Before attempting to answer this difficult question, the Court must provide some background.

The ADA "as a whole is intended 'to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities.'" *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 589, 119 S. Ct. 2176, 144 L.Ed.2d 540 (1999) (citing 42 U.S.C. § 12101(b)(1)).  Title III of the ADA, which Plaintiff claims covers this case, provides that, as a general rule, "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).  "The statute applies to the services **of** a place of public accommodation, not services **in** a place of public accommodation.  To limit the ADA to discrimination in the provision of services occurring on the premises of a public accommodation would contradict the plain language of the statute."  *Nat'l Fed'n of the Blind v. Target Corp.* ("*Target*"), 452 F. Supp. 2d 1148, 953 (N.D. Cal. 2006) (emphasis in original) (citations omitted).[1]

Moreover, Title III of the ADA, in a section entitled "specific prohibitions," defines discrimination to include:

> a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the **absence of auxiliary aids and services**, **unless** the entity can demonstrate that taking such steps would **fundamentally**

---

[1]  In light of this authority, the Court rejects Defendant's argument that the Court should dismiss this action because "the ADA was simply not drafted with the specific regulation of virtual spaces in mind," which relies on a bevy of Eleventh Circuit authority.  (*Cf.* Mot. 4-7.)  The Court also finds this case distinguishable from those that have determined that Title III does not apply to internet-based retailers or service providers, as Defendant operates a chain of brick-and-mortar pizza stores.  *Cf. Young v. Facebook, Inc.*, 790 F. SUpp. 2d 1110, 1114-16 (N.D. Cal. 2011) (explaining that a website is not a physical structure and plaintiff had not alleged a sufficient nexus to a physical place of public accommodation).  Indeed, Defendant does not challenge the existence of a "nexus" between its websites and its pizza franchises.  (Mot. 5.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 16-06599 SJO (SPx)</u>         DATE: <u>March 20, 2017</u>

    **alter the nature** of the goods, service, facility, privilege, advantage, or accommodation being offered or would **result in an undue burden**.

42 U.S.C. § 12182(a)(2)(A)(iii) (emphasis added). "This section explicitly exempts public accommodations from the obligation to provide auxiliary aids or services if doing so would fundamentally change the nature of the good or service, or result in an undue burden." *Target*, 452 F. Supp. 2d at 955 (citation omitted). "In regulations implementing this section, the Department of Justice has explained that the ADA obligates public accommodations to communicate effectively with customers who have disabilities concerning hearing, vision, or speech." *Id.* (citing 28 C.F.R. § 36.303(c)). Moreover, regulations provide "examples" of "auxiliary aids and services," including "screen reader software" and "other effective methods of making visually delivered materials available to individuals who are blind or have low vision[.]" 28 C.F.R. § 36.303(b)(2).

Notwithstanding the above, Defendant contends the Court must either dismiss or stay this action because the DOJ has not promulgated concrete guidance regarding the accessibility standards an e-commerce webpage must meet, much less required that companies operating such webpages comply with the specific standards Plaintiff references in his Complaint. In support of this position, Defendant places great weight on the fact that the United States Department of Justice ("DOJ") has not yet issued a formal adjudication or rule on the subject. In order to address the merits of Defendant's contention, the Court must review the DOJ's position on the issue of web accessibility.

As a threshold matter, the DOJ has consistently stated its view that the ADA's accessibility requirements apply to websites belonging to private companies. *See, e.g.*, *Applicability of the Americans with Disabilities Act (ADA) to Private Internet Sites: Hearing before the House Subcommittee on the Constitution of the House Committee on the Judiciary*, 106th Cong., 2d Sess. 65-010 (2000) ("It is the opinion of the Department of Justice currently that the accessibility requirements of the Americans with Disabilities Act already apply to private Internet Web sites and services."); 75 Fed. Reg. 43460-01 (July 6, 2010) ("The Department believes that title III reaches the Web sites of entities that provide goods or services that fall within the 12 categories of 'public accommodations,' as defined by the statute and regulations."). Contrary to Plaintiff's suggestion, however, this realization does not end the inquiry, for the Court must analyze whether the DOJ has issued guidance regarding the type of access at issue in this case. (*Cf.* Mot. 19-20.)

On July 26, 2010, the DOJ issued a Notice of Proposed Rulemaking ("NOPR"), stating it was "considering revising the regulations implementing title III of the [ADA] in order to establish requirements for making the goods, services, facilities, privileges, accommodations, or advantages offered by public accommodations via the Internet, specifically at sites on the [web], accessible to individuals with disabilities." *Nondiscrimination on the Basis of Disability; Accessibility of Web*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 16-06599 SJO (SPx)**          DATE: **March 20, 2017**

*Information and Services of State and Local Government Entities and Public Accommodations* ("*NOPR*"), 75 Fed. Reg. 43460-01, 2010 WL 2888003 (July 26, 2010). In the section of this NOPR titled "Need for Department Action," the DOJ explains that "[t]he Internet has been governed by a **variety of voluntary standards** or structures developed through nonprofit organizations using multinational collaborative efforts," including the W3C's "develop[ment] [of] a variety of technical standards and guidelines ranging from **issues related to mobile devices** and privacy to internationalization of technology," as well as the "**creat[ion] of the [WCAG]**." *Id.* at *43463 (emphasis added). A few paragraphs down, the DOJ notes that

> For years, businesses and individuals with disabilities alike have urged the Department to provide guidance on the accessibility of Web sites of entities covered by the ADA. While some actions have been brought regarding access to Web sites under the ADA that have resulted in courts finding liability or in the parties agreeing to a settlement to make the subject Web sites accessible, **a clear requirement that provides** the disability community **consistent access** to Web sites and covered entities **clear guidance on what is required under the ADA does not exist**.

*Id.* at *43464 (emphasis added). The NOPR concludes with the DOJ stating its "interest[ ] in gathering other information or data relating to the Department's objective to provide requirements for Web accessibility under titles II and III of the ADA" and soliciting feedback and public comment. *Id.* at *43467.

Although the NOPR issued in July 2010, the DOJ has yet to issue a final rule regarding web access. In light of this undisputed fact, Defendant argues that Plaintiff's request to impose liability under the ADA for Defendant's alleged failure to abide by certain accessibility standards would violate Defendant's constitutional right to due process. In so arguing, Defendant relies on *United States v. AMC Entertainment, Inc.*, a Ninth Circuit Court of Appeals decision in which the court considered whether the ADA obligated theater owners to retroactively incorporate a comparable viewing angle requirement in movie theaters. 549 F.3d 760 (9th Cir. 2008). The district court had held that AMC's existing facilities violated a particular standard, § 4.33.3, awarded summary judgment in favor of the government, and issued a comprehensive remedial order. *Id.* at 762. The Ninth Circuit reversed, holding that "[b]ecause the injunction requires modifications to multiplexes that were designed or built before the government gave fair notice of its interpretation of § 4.33.3, the injunction violates due process[.]" *Id.* In reaching this conclusion, the Ninth Circuit surveyed the history of litigation involving § 4.33.3, which primarily turned on different possible interpretations of the phrase "lines of sight comparable." *Id.* at 764-67. After noting that its sister circuits had reached different conclusions regarding the meaning of this phrase, the court emphasized that "[a]ll circuits considering § 4.33.3 found common ground on the proposition that the regulation was vague or ambiguous." *Id.* at 767 (citation omitted).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

___ : ___

**CASE NO.:** CV 16-06599 SJO (SPx)          **DATE:** March 20, 2017

After examining these decisions, the Ninth Circuit stated " it is clear that the text of § 4.33.3 did not even provide our colleagues, armed with exceptional legal training in parsing statutory language, a 'reasonable opportunity to know what is prohibited'—let alone those of 'ordinary intelligence.'" *Id.* at 768 (citing *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)). Moreover, the court "share[d] the First Circuit's frustration that the government could have solved this problem [of vagueness], without time- and cost-consuming litigation, by merely clarifying § 4.33.3 through amendment or some other form of public pronouncement[.]" *Id.* at 769 (citation omitted). "The government has had ample opportunity throughout the stadium-seating era to update the regulation to respond to the overhaul of the nation's movie-theaters." *Id.* Notwithstanding being provided with "ample opportunity" to update or clarify this provision, the government had not done so:

> As late as 1999, the Access Board indicated that it was still "**considering whether to include specific requirements** in the final rule that are consistent with DOJ's interpretation of 4.33.3 to stadium-style movie theaters." . . . **No new rule was forthcoming**. Again, in April of 2002, the Access Board published a **new proposed draft regulation** that included a viewing angle requirement. . . . This proposal was **never formally accepted**. When Regal Cinemas sought certiorari from the Supreme Court to resolve the circuit split between the Ninth and Fifth Circuits, the Solicitor General of the United States represented to the Supreme Court that review was not necessary because the **DOJ planned to issue new regulations** to resolve the split: "There is no need for this Court to exercise its certiorari jurisdiction to address an issue of regulatory interpretation that is presently being addressed directly by the relevant regulatory bodies themselves." . . . . Despite this representation to the Court, made now **over four years ago**, § 4.33.3 has not been replaced with something more specific. **We decline to require AMC to have determined the precise meaning of the regulation when the government did not do so.**

*Id.* (emphasis added) (internal citations omitted). A similarly lengthy timeline of DOJ inaction exists in this case, leaving "in-house counsel [and] others to read correctly legislative tea-leaves . . ." *Id.* at 770.

The phrase "due process" does not appear once in Plaintiff's Opposition, and Plaintiff's sole citation to *AMC* is couched in a footnote for an inapposite point of law. (*See* Opp'n 20 n. 9.) Whether inadvertent or purposeful, this omission is telling, and the Court is independently authorized to grant summary judgment on this conceded issue. *See Garrett v. City of Los Angeles*, No. CV 12-1670 FMO (SSx), 2014 WL 11397949, at *11 (C.D. Cal. Mar. 3, 2014) (granting summary judgment in favor of defendant on a particular claim where plaintiff failed to address defendant's arguments regarding this claim); *Silva v. U.S. Bancorp*, No. 5:10-cv-01854-

**CASE NO.:** CV 16-06599 SJO (SPx)  **DATE:** March 20, 2017

JHN-PJWx, 2011 WL 7096576, at *3 ("In addition, the Court finds that Plaintiff concedes his recordkeeping claim should be dismissed by failing to address Defendants' arguments in his Opposition.").

In any event, the Court finds Defendant's due process challenge to be meritorious, largely because it finds *AMC* to be squarely on point. In *AMC*, the Ninth Circuit was troubled by the inclusion of ambiguous language in a particular guideline and by the DOJ's quest to have its late-announced interpretation of this language—offered for the first time in an amicus brief—apply to movie theaters that had already invested substantial sums in building their theaters under a particular set of operating assumptions. Here, too, Plaintiff seeks to impose on all regulated persons and entities a requirement that they "compl[y] with the WCAG 2.0 Guidelines" without specifying a particular level of success criteria and without the DOJ offering meaningful guidance on this topic. (*Cf.* Compl. ¶ 36.) This request flies in the face of due process.

Notwithstanding his failure to address Defendant's four-page argument regarding *AMC* and due process, Plaintiff appears to argue that because the DOJ has issued several "Statements of Interest" and has entered into consent decrees and settlements obligating entities to abide by particular WCAG 2.0 success criteria, this lawsuit cannot be dismissed. (*See* Opp'n 19-20.) This argument does not hold water.

As a threshold matter, the Ninth Circuit "has declined to give deference to Access Board guidelines that have not yet been adopted by the DOJ." *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 674 (9th Cir. 2010). "Moreover, [the Ninth Circuit] ha[s] refused to defer to a proposed regulation published by the DOJ itself." *Id.* (citing *Cal. Rural Legal Assistance v. Legal Servs. Corp.*, 917 F.2d 1171, 1173 (9th Cir. 1990)). Furthermore, "[t]he DOJ's interpretation in a notice of proposed rulemaking is similarly unpersuasive." *Id.* Given the Ninth Circuit's decision not to give deference to these categories of concrete, public statements made in the ADA context, the Court concludes that little or no deference is owed to statements made by the DOJ through documents filed in the course of litigation with regulated entities.

Even if the Court were to give deference to the cited Statements of Interest, consent decree, or settlement, it would nevertheless conclude that imposing the requirements urged by Plaintiff would violate Defendant's right to due process. First, the Statements of Interest cited by Plaintiff were filed in connection with cases that are materially distinct from the case at bar, and even suggest that Domino's provision of a telephone number for disabled customers satisfies its obligations under the ADA. In the first of these Statements of Interest, attached as Exhibit A to Plaintiff's Request for Judicial Notice ("RJN"), the DOJ asked a court in the Southern District of Florida not to be persuaded by defendant Lucky Brand's arguments (1) that because the ADA contains no specific requirement mandating that point-of-sale ("POS") devices have tactile key pads, it has no obligation to ensure that customers who are blind can make purchases using it's debit payment

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

CASE NO.: **CV 16-06599 SJO (SPx)**     DATE: **March 20, 2017**

option; or (2) that because disabled individuals can purchase items using cash, credit, or by processing their debit card as a credit card, there was no discrimination under the ADA. (*See* RJN, Ex. A at 1-2, ECF No. 7.)² The DOJ was primarily concerned that Lucky Brand's use of a touch-screen POS device, for which Plaintiff alleged there was a readily available substitute, required blind customers either to divulge their personal identification number ("PIN") to a third party, violating the ADA's mandate that companies "protect the privacy and independence of" individuals with disabilities, *see* 28 C.F.R. Section 36.303(c)(1)(ii), or to use a different form a payment. (*See generally* RJN, Ex. A.) The DOJ began by rejecting Lucky Brand's argument that POS devices did not fall within the scope of the ADA, analogizing its consistently expressed view that "websites [are] covered by title III despite the fact that there are no specific technical requirements for websites currently in the regulation or ADA Standards." (RJN, Ex. A at 7.) The DOJ then noted, however, that until the process of establishing specific technical requirements for a particular technology is complete, "public accommodations have a **degree of flexibility in complying** with title III's more general requirements of nondiscrimination and effective communication—but they still must comply." (RJN, Ex. A at 8-9 [emphasis added].) Plaintiff has failed to articulate why either Defendant's provision of a telephone hotline for the visually impaired or it's compliance with a technical standard other than WCAG 2.0 does not fall within the range of permissible options afforded under the ADA.

The Statements of Interest attached as Exhibits B and C to the RJN offer similarly little help to Plaintiff. In these two cases, the plaintiffs sought to require Harvard University and Massachusetts Institute of Technology ("MIT") to provided closed captions on their free online programming and the universities moved to stay or dismiss these cases. (*See generally* RJN, Exs. B, C.) No "due process" challenge was raised in connection with these motions, perhaps because the plaintiffs requested a particular auxiliary aid that the universities simply had not been providing. Indeed, in her Report and Recommendation, the assigned Magistrate Judge noted the "DOJ has identified the 'auxiliary aid requirement [a]s a flexible one,' insofar as the 'public accommodation can choose among various alternatives as long as the result is effective communication.'" R. & R. Regarding Defs.' Mot. to Stay or Dismiss, *Nat'l Ass'n of the Deaf v. Harvard Univ.*, No. 3:15-cv-30023-MGM, at *24 (D. Mass. February 9, 2016), ECF No. 50 (quoting *Nondiscrimination on the Basis of Disability by Public Accommodations and in Commercial Facilities*, 56 Fed. Reg. 35544, 35566 (July 26, 1991)). She went on to note that "[t]he flexibility to choose an appropriate auxiliary aid does not extend so far as to allow a public accommodation to choose to provide **no** auxiliary aid when one is required for effective communication if a reasonable one exists." *Id.* (emphasis added). Here, by contrast, Plaintiff asks the Court to require Defendant to comply with a

---

² The Court takes judicial notice of this publicly filed litigation document pursuant to Rule 201(b) of the Federal Rules of Evidence.

particular—but not fully identified—web accessibility standard issued by a non-government entity that is subject to modification. The Court thus finds the Harvard and MIT cases to be inapposite.

The consent decree and settlement proffered by Plaintiff offer him less assistance. Plaintiff has submitted evidence indicating the DOJ has, at least twice, required entities subject to Title III to adopt measures to ensure that their websites and mobile applications conform to, at a minimum, certain WCAG 2.0 success criteria. For example, Plaintiff points to a settlement agreement between the DOJ and Peapod LLC, America's leading Internet grocer, under which Peapod was obligated, among other things, to "ensure that www.peapod.com and its mobile applications conform to, at minimum, the Web Content Accessibility Guidelines 2.0 Level AA Success Criteria (WCAG 2.0 AA), except for certain third party content[.]" *See* Press Release, *Justice Department Enters into a Settlement Agreement with Peapod to Ensure that Peapod Grocery Delivery Website is Accessible to Individuals with Disabilities*, THE UNITED STATES DEPARTMENT OF JUSTICE (Nov. 17, 2014), *available at* https://www.justice.gov/opa/pr/justice-department-enters-settlement-agreement-peapod-ensure-peapod-grocery-delivery-website. Plaintiff also points to a consent decree reached in *National Federation of the Blind, et al. v. HRB Digital LLC, et al.*, under which the defendants would, *inter alia*, ensure that their website, www.hrblock.com, and their Online Tax Preparation Product "conform to, at minimum, the Web Content Accessibility Guidelines 2.0 Level A and AA Success Criteria[.]" Consent Decree, No. 1:13-cv-10799-GAO, at *5 (D. Mass. Mar. 24, 2014), ECF No. 60.

These two examples highlight, rather than dispel, the vagueness concern that forms the basis of Defendant's Motion, and demonstrate why a lack of formal guidance in this complex regulatory arena places those subject to Title III in the precarious position of having to speculate which accessibility criteria their websites and mobile applications must meet. In the Peadpod case, the DOJ required the defendants to fashion their website and mobile applications to conform with WCAG 2.0 Level AA Success Criteria. In *HRB*, by contrast, the DOJ obligated the defendants to instead comply with WCAG 2.0 Level AA **or Level A** Success Criteria. In its own NOPR, the DOJ noted that "the WCAG 2.0 contains 12 guidelines addressing Web accessability" and requires that a "Web page must satisfy the criteria for all 12 guidelines under one of three conformance levels: A, AA, or AAA," which "indicate a measure of accessability and feasability." 75 Fed. Reg. at *43465. Moreover, immediately below this discussion, the DOJ sought feedback regarding the following difficult-to-answer questions:

> Question 1. Should the Department **adopt the WCAG 2.0's "Level AA Success Criteria**" as its standard for Web site accessability for entities covered by titles II and III of the ADA? Is there any reason why the Department should consider adopting another success criteria level of the WCAG 2.0? Please explain your answer.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

CASE NO.: <u>CV 16-06599 SJO (SPx)</u>   DATE: <u>March 20, 2017</u>

> Question 2.  Should the [DOJ] adopt the **section 508 standards instead of the WCAG** guidelines as its standard for Web site accessability under titles II and III of the ADA?   Is there a **difference in compliance burdens and costs** between the two standards?  Please explain your answer.
>
> Question 3.  How should the [DOJ] address the **ongoing changes to WCAG** and section 508 standards" and "[s]hould covered entities be given the option to comply with the latest requirements?
>
> Question 4.  Given the **ever-changing nature of many Web sites**, should the Department adopt **performance standards instead** of any set of **specific technical standards** for Web site accessibility? . . . .

*Id.* (emphasis added).  Almost seven years have transpired since the DOJ first posed these questions to the interested public, but the public has yet to receive a satisfactory answer.[3]  Indeed, the Court, after conducting a diligent search, has been unable to locate a single case in which a court has suggested, much less held, that persons and entities subject to Title III that have chosen to offer online access to their goods or services must do so in a manner that satisfies a particular WCAG conformance level.

The Court therefore **GRANTS** Defendant's Motion and **DISMISSES** each of Plaintiff's causes of action **without prejudice** pursuant to the primary jurisdiction doctrine, which "allows courts to stay proceedings or dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency."  *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008) (affirming dismissal of a case referring the issue of "slamming," a question of federal telecommunications policy, to the Federal Communications Commission for consideration in the first instance).  Congress has vested the Attorney General with promulgating regulations clarifying how places of public accommodation must meet their statutory obligations of providing access to the public under the comprehensive ADA.  Congress has further provided that the DOJ's mandate with respect to Title III of the ADA is "to issue implementing regulations, *see* 42 U.S.C. § 12186(b), to render technical assistance explaining the responsibilities of covered individuals and institutions, § 12206(c), and to enforce Title III in court, § 12188(b)."  *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998).  Such regulations and technical assistance are necessary for the Court to determine what obligations a regulated individual or institution must abide by in order to comply with Title III.  Moreover, the Court finds the issue of web accessibility obligations to

---

[3]  Even more problematic to Plaintiff's case is the apparent absence of any discussion by the DOJ regarding whether a mobile website or mobile application must conform with "Apple's iOS accessibility guidelines."  (*Cf.* Compl. ¶ 31.)

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES - GENERAL**

\_\_ : \_\_

CASE NO.: <u>CV 16-06599 SJO (SPx)</u>   DATE: <u>March 20, 2017</u>

require both expertise and uniformity in administration, as demonstrated by the DOJ's multi-year campaign to issue a final rule on this subject.  *See Clark*, 523 F.3d at 1115.  The Court concludes by calling on Congress, the Attorney General, and the Department of Justice to take action to set minimum web accessibility standards for the benefit of the disabled community, those subject to Title III, and the judiciary.

III.    <u>RULING</u>

For the foregoing reasons, the Court **GRANTS** Defendant Domino's Pizza, LLC's Alternative Motion to Dismiss or Stay.  This matter shall close.

IT IS SO ORDERED.